[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In this matter, referred to the undersigned, the plaintiff, a land surveyor, claims payment for professional services to the defendants, who, in reply, deny the claims of any moneys due to the plaintiff. In their Answer they set forth defenses that the plaintiff's services were of no value to them because of inaccurate and negligent preparation of surveys and maps, and, therefore, by way of allegations of set-off and counterclaim, make claims against the plaintiff far in excess of the balance, the plaintiff claims is due to him.
In essence, the defendants claim that the plaintiff's services as a surveyor in connection with two separate subdivision projects, on two parcels of land owned by the defendant Jocelyn Myjack, one in the Town of East Haven, called Sylvan Hills, and the other in Branford, known as "The Rushes", resulted in defective preparation of certain maps because of inaccurate measurements and depiction of roads and curbings.
The defendant, Stanley, has no ownership interest in the land parcels in issue, but has been involved in both subdivision projects as the agent-entrepreneur, acting for the defendant, Myjack. He has had considerable previous experience in subdivision and condominium developments in New Haven County. This is attested to in plaintiff's Exh. B, a map of the same parcel of land in East Haven, consisting of approximately 17.86 acres, showing that the defendant, Stanley, was one of three co-owners who purchased the parcel in 1981, and had planned to build a condominium on it under the name of "Yorkshire Estates." The map, Exh. B., for this project was prepared by Gordon Bilides, a civil engineer and land surveyor.
After the projected Yorkshire Estates condominium project, apparently, was aborted, the land parcel became owned by the co-defendant herein, Jocelyn Myjack, who, with the assistance of the co-defendant Stanley, decided to devote the land to a residential subdivision under the name "Sylvan Hills." Plaintiff's Ex. C. is entitled "Final Subdivision Map of Sylvan Hills," and is dated January 3, 1984. It also contains a note on the map stating that CT Page 4501 the "Perimeter Boundary Survey was done by Gordon Bilides, the registered surveyor involved in the preparation of Exh. B, the proposed "Yorkshire Estates." It is relevant to mention that a second note on Exh. C states that the "Interior Lot Design", of the proposed Sylvan Hills subdivision, was the work of S. A. Hanchuruck, Jr., L.S." (Licensed Surveyor), the plaintiff in the instant matter.
Plaintiff's Exh. D is also part of the Final Subdivision Map of "Sylvan Hills", so that both C and D relate to the Sylvan Hills project.
The plaintiff sent all his bills for the various services as to both subdivisions to the defendant, Stanley, who operated his business under the name "Structures", at his business address, 79 Gould Lane, Guilford, Connecticut.
At this point the undersigned deems it necessary to examine the state of pleadings of the parties. He notes that paragraphs 2 and 3 of the plaintiff's complaint alleges that.
 "2. The defendant Jocelyn Myjack, through her agent, George Stanley, retained plaintiff to survey plaintiff's property located at The Rushes, Cherry Hill Road, Branford, and prepare and revise a map for a subdivision.
 3. The defendant Jocelyn Myjack owes the Plaintiff the sum of three thousand dollars for said work."
Paragraph 4 and 5 alleges that,
 "4. The defendant George Stanley, retained plaintiff to survey property located at Sylvan Hills, East Haven, Connecticut.
 5. The defendant George Stanley owes the plaintiff the sum of nine hundred seventy-five dollars for said work."
And, turning to the "Amended Answer, Special Defense and Counter Claim" of the parties, it alleges as follows:
"AS TO THE FIRST SPECIAL DEFENSE:
 1. The surveys done by the plaintiff of the properties on Cherry Hill Road, Branford, Connecticut, and Sylvan Hills, East Haven, Connecticut, were inaccurate and incorrect and CT Page 4502 of no value to the defendant Jocelyn Myjak.
 2. Said surveys were performed in a negligent and unskilled manner resulting in misplaced and inaccurate lines.
 3. As a result thereof, the said defendant was required to hire other surveyors to resurvey the developments above-described.
AS TO SET-OFF AND COUNTER CLAIM
 3. All the allegations of the First Special Defense, Paragraphs 1 — 3 are made corresponding paragraphs hereof.
 4. The cost of the `corrective' survey and other expenses consequently incurred by said defendant exceed the value of any moneys owed to [sic] the plaintiff.
 5. As a result of the inaccurate and incorrect survey made by the plaintiff for the project known as `Sylvan Hills, East Haven, Connecticut' and the stake-outs for each of the projects above-described, the defendant Jocelyn Myjak has been put to substantial expenses to relocate the road and sidewalks for Sylvan Hills and filing costs for the resurvey of Cherry Hill project."
It is difficult to comprehend the precise scope of the pleadings quoted, since, in the complaint filed, the plaintiff seeks reimbursement only from the defendant Myjack for his services for the "Rushes", Branford project, in the sum of $3000.00; but for his services for the "Sylvan Hills", East Haven project, he seeks the sum of $975.00 only from the defendant, George Stanley.
The pleadings in the Answer, Set-Off and Counterclaim, are proffered only as to the defendant, Myjack, and make no reference to the defendant Stanley. Whether this status of the pleadings is related to the plaintiff's attachment of the real estate of the defendant Myjack only, is not made clear.
A considerable amount of testimony was adduced by the experts called to testify for the parties. Ramesh Synghal, a Connecticut registered civil engineer of thirty years experience, testified for the plaintiff, explaining that he prepared Exh. A, the profile map of the East Haven Sylvan Hills subdivision, dated February 6, CT Page 4503 1984, for the defendants. His testimony was not attacked.
Gordon Bilides, a Connecticut registered civil engineer and surveyor of 40 years experience, also testified as a plaintiff witness. He brought out that, as a civil engineer, he was involved in the preparation of the two maps comprising Exh. B, which were prepared for the aborted 1981 condominium development, Yorkshire Estates, of which the defendant Stanley was one of the three co-owners of the land parcel involved.
The plaintiff Stephen A. Hanchuruck, Jr., testified that he has been a licensed land surveyor, with a background of 22 years experience, working first for the Connecticut State Highway engineering department from 1968 to 1979, thereafter engaging in business as a surveyor on his own account. He explained that the two maps, Exhs. C and D were parts of the "Final Subdivision Maps", dated January 3, 1984, and revised February 24, 1984.
The map, Exh. C, bears the notation that the "Perimeter Boundary Survey" was done by Gordon Bilides, but shows that the "interior lot design" was done by the plaintiff, Hanchuruck, Jr., as the surveyor. Exh. D, also part of the "Final Subdivision Maps" for Sylvan Hills, bears the inscription that it was prepared by Hanchuruck, Jr., as the surveyor. He testified that he located the property lines and designed the location of the Sylvan Hills Road, upon which the subdivision units border, and he made the necessary computations establishing the borders of the lots. He explained that he first located the boundary lines of the contiguous state highway and then established the grades, putting in marker stakes. He maintained that the curvature of the roadway and the location of the sidewalks were laid out by others, and not by him. He insisted that the curbings of the roadway were not put properly in place, and that he so informed Stanley — a claim which Stanley denied.
Plaintiff, Hanchuruck, Jr., admitted that in 1986 he was on the construction site when, he claimed, the paving of the roadway had not been finished; and that he had a disagreement with the defendant, Stanley, about the work being done. His testimony further was that because he was not being paid for work he had already completed, he, thereupon, left the scene, and did no further work on the project.
Plaintiff's Exh. F, dated January 5, 1987, is a bill for services rendered as per "invoice dated 8/7/86" and lists an original sum of $1475.00 but, apparently, because defendants paid $500.00 on account, this left a balance due of $975.00, in connection with the "Sylvan Hills" subdivision.
The second part of the plaintiff's bill, Exh. G, the CT Page 4504 plaintiff explained, concerned the services he rendered for the Branford "Rushes" subdivision. And for this project he rendered two bills — the first dated March 3, 1987 claimed payment for $3000.00 as follows:
 "Professional services, The Rushes Cherry Hill Road Branford, Connecticut. Prepared maps including plans and profiles, Sept. 28, 1979, Dec. 13, 1982, Sept. 10, 1985, final map Feb. 11, 1987. $3,000.00"
The second sheet of Exh. G is dated May 5, 1987 and states that it sought payment for "professional services" as follows:
 "Professional services, subdivision known as "The Rushes", Plans and Profiles, plot plans with revisions.
 Dec. 11, 12, 13 1982 24 hrs revised subdivision map. $ 720.00 March 3, 1983 8 hrs plan and profile and plot plan of lot #1 240.00 Sept. 6, 9 10 24 hrs. revise subdivision map aga 720.00 June 16, 1986 6.5 hours plot plans lots 3, 4 5 200.00 Feb. 7, 9, 10 11 1987 32 hours final map and Site Development map 32 hours 1,120.00 TOTAL $ 3,000.00"
This second sheet sets out dates commencing December 11, 1982, and continuing until February 11, 1987, when the final map for the "Rushes" subdivision was filed. Since the total bill for the "Rushes" is $3000.00, and the plaintiff claims he put in a total of 104.5 hours of work, the division of $3000.00 by the number of hours, yields a per hour rate of $28.71 for plaintiff's services as a surveyor.
The principal thrust of the Special Defense, Set-Off and Counterclaim of the defendant Jocelyn Myjack, dated August 1, 1989, is directed to the Sylvan Hills subdivision. And the main evidence adduced at the trial in its support is based on certain maps prepared for the defendant Stanley subsequent to the plaintiff's disassociation with the defendant's subdivision projects.
In connection with the East Haven Sylvan Hills subdivision, CT Page 4505 the co-defendant Myjack admitted in her pleadings, that a balance of $975.00 is owed to the plaintiff for his surveyor's services, as set forth in Exh. F, dated January 5, 1987. The two subsequent bills, dated March 3, and May 5, 1987, listing $3000.00 due for plaintiff's services (set out in Exh. G) all deal with "The Rushes" subdivision in Branford.
It is only as to defendant's Exh. 4, dealing with the plaintiff's work for the Sylvan Hills, that the acceptability of his services rendered for that subdivision, becomes the prime issue in this case. Defendant's Exh. 4, a letter from the town engineer of East Haven, dated October 4, 1990, sent to Stanley, which raises the issue as to whether the design of the roadway, known as Sylvan Hills Road, complies with paragraph 7.3.4 of the East Haven Subdivision Regulations, requiring that "[t]he standard construction detail has the back of the sidewalk coincident with street line."
Defendant's Exh. 7, a letter on the stationery of "Louis Gherlone, Tree Farms and Excavating, Inc., dated October 8, 1990, and sent to "Attention: George [Stanley] — Structures, Inc., 256 West Main St., Branford, CT 06405," is the basis of defendant Stanley's claim at the trial herein, that the total cost of relocating the road (Sylvan Hills Road) "within proper easement," would amount to $64,200.00. And that Gherlone's "proposal" claims an additional charge would have to be made "for lot 20, to remove and replace the sidewalk and landscaping, the price is $2880.00," making a total of $67080.00.
The undersigned notes that the trial in the instant matter was commenced on October 9, 1990, the day after the October 8, 1990 date of defendant's Exh. 7, the Gherlone letter. Louis Gherlone, the owner of "Tree Farms and Excavating, Inc., Louis Gherlone," apparently has done business with the defendant Stanley in connection with the preparation of land for various subdivisions.
The undersigned finds it significant that Gherlone was not called to testify as a defendant witness. Only Exh. 7, the "proposal" was submitted in evidence by the defendants, based only on the opinion, rendered by the defendant Stanley, that the amount involved — $67,080.00 — was reasonable. Stanley was not qualified as an expert in tree removal or construction of sidewalks and curbs, or the resetting of catch basins or manholes, levelling course asphalt to adjust crown, resurfacing or laying out roads or "adjusting driveways as needed" — all items of the "Gherlone" proposal.
The inference can reasonably be drawn that this "proposal" was tailored by Gherlone, for the purposes of the instant trial, CT Page 4506 to help a business friend, Stanley, to defeat the plaintiff's claim for payment of the balance still owed him.
The burden of proof rested on the defendants to prove the necessity of doing the extensive repair work claimed to be required, and the reasonableness of its cost. The undersigned cannot conclude that the defendant, Stanley, has sustained his burden of proof to make Exh. 7 relevant and credible in support of his counterclaim. In this connection, the undersigned observes also that Exhs. M and N, "Memos" from the files of the town engineer of Branford, show that the same Gherlone was also involved in the Branford "Rushes" subdivision, doing work for Stanley.
The undersigned has made a detailed examination of the numerous maps in evidence, as discussed hereinabove. Defendant Stanley appears to place his main reliance on defendant's Exh. 5, consisting of seven "8 1/2" X 10" maps prepared by the surveyor Leslie A. Nafis, the main witness for the defendant, dated August 15, 1989. These, purportedly, show encroachments on lots 3, 6, 9, 10, 14, 15 and 20 in the Sylvan Hills subdivision. It is with regard to these claimed encroachments that the defendant Stanley claims a cost of almost $74,000.00 (as per the work claimed necessary to be done pursuant to the Gherlone Exh. 7 proposal), to allow the Sylvan Hills subdivision to be accepted, and the $30,000.00 bond filed by the defendant with the East Haven Planning and Zoning Commission, released.
The undersigned takes note that the defendant, Jocelyn Myjack, did not testify at the trial.
The pivotal issue present herein is the credibility of the testimony of the parties and their witnesses. In his post-trial Memorandum, the plaintiff points out that, on the first day of trial the defendant's pivotal witness, the surveyor Nafis, testifying on the stand, stated that he had no problems with plaintiff's survey and map of Sylvan Hills; and that the geometry and lot sizes all "closed out", i.e., were accurate. Plaintiff further sets out that the same witness, Nafis, also admitted in his testimony on the first day of his testimony, that the distances on the map corresponded to distances on the ground, and that he had no problem with the perimeter survey of the plaintiff Hanchuruck. But on the second day of his testimony, Nafis then claimed there were mistakes on plaintiff's maps (Exhs. C and D). But when challenged to support his testimony by making calculations for the elucidation of the court, he was unable to do so. Witness Nafis also was forced to admit that there were some mistakes on his (Nafis') map — although he claimed that these were irrelevant, and only mistakes of transposition of figures. CT Page 4507
The undersigned must also note that the plaintiff, in his rebuttal testimony while on the stand, did without difficulty, make the necessary calculations to support his contentions. Of particular weight, on the issue of competency of the plaintiff's survey and maps, was the fact that the defendant Stanley, although he is not an engineer or surveyor, claimed on direct examination, that the plaintiff had erred in his map, prepared for The Rushes, locating the boundary of the Connecticut Turnpike adjoining The Rushes in Branford, but on cross-examination was not able to calculate a necessary angle to establish his claim of error by the plaintiff.
Another significant contradiction of the defendant Stanley was the fact that he contended strongly that a map prepared by the plaintiff had resulted in leaving lot #2 in The Rushes as nonconforming because it had less than a 20,000 sq. ft. area — the minimum as required by the Branford subdivision regulations.
The plaintiff introduced a map, Exh. K, prepared for the defendant Stanley by surveyor Paul Nott, which showed the same size for lot #2, as shown on plaintiff's map, Exh. K, which Stanley had claimed was non-conforming: and that it showed the same angles along the state turnpike as shown on plaintiff's Exh. K. The evidence showed conclusively that lot #2 was fully conforming and that its square foot area was in excess of the required minimum of 20,000 sq. ft. Another significant discrepancy in Stanley's testimony was his claim that the surveyor, Paul Nott, was the surveyor of record when the Branford, "The Rushes", subdivision was approved. The plaintiff showed conclusively by his introduction of Exh. J, that the plaintiff was the surveyor of record as of December 15, 1986, when "The Rushes", was approved by the Branford Planning and Zoning Commission.
The defendants' surveyor Nafis' map (Exh. 3), when compared to plaintiff's map, Exhs. C and D, was shown to be substantially the same, although with slight variations, where, it was shown, Nafis had made some minor errors on his map.
FINDING OF FACTS
As a result of the above analysis of the evidence, the following facts are found:
(1) The defendants have failed to sustain the burden of proof upon them by the required preponderance of the evidence, to show that the plaintiff was negligent in the preparation of surveys and maps for "The Rushes" subdivision in Branford.
(2) As to the Sylvan Hills subdivision in East Haven, the defendants' seven maps of Exh. 5, do show some minor CT Page 4508 encroachments, as to lots 3, 4, 14, 15, and 20.
(3) The defendant Stanley has not sustained his burden of proof to show that the measurements of the plaintiff on the surveys and maps made by him were manifestly misplaced and showed inaccurate lines; and that they were the sole cause of the resulting encroachments shown on defendant's Exh. 5.
(4) As to both "The Rushes" and "Sylvan Hills" subdivisions, the plaintiff was the surveyor of record when they were approved by the respective authorities in each town.
(5) The main issue unresolved in the instant matter concerns the release of the $30,000.00 bond the defendant Stanley was required to give to the East Haven Planning and Zoning Commission to ensure conformity with the East Haven subdivision Regulations.
(6) That entity refuses to release the defendants' bond until the non-conformity of the "Sylvan Hills" subdivision, relating to "streets, as set out in subsection `a' and `b' of Exhibit 4, were complied with."
(7) The plaintiff's expert witnesses, the engineer Synghal, the registered engineer and land surveyor, Gordon Bilides, and the registered land surveyor, Bernard Godfrey, all respected professionals in their respective fields, attested to the competency of the plaintiff's surveyor work involved in this case.
(8) The defendant was reasonably entitled to enlist the services of the surveyor, Nafis, to assess the situation as to the compliance of Sylvan Hills with the East Haven regulations and the preparation of the seven maps comprising Exh. 5 by him. However, the bill of the surveyor, Nafis, in the amount of $1750.00, is found somewhat excessive.
(9) The short post-trial Memorandum submitted by the defendant Stanley, in which he seeks to absolve his expert witness Nafis of any negligent services, is not found convincing. Moreover, the claims made for extra reimbursement, in addition to the $1750.00 for Exh. 5, as listed on page 3 of the defendant's Memorandum, are not found warranted in the amount claimed.
(10) The undersigned cannot find in the totality of the evidence, that the plaintiff Hanchuruck admitted that the sylvan Hills road was improperly cut out by him; and that the claimed encroachments set forth on defendants' Exhs. 3 and 5 were the result of any negligence and faulty surveying and map-making of the plaintiff.
(11) The defendant in his Memorandum seeks to claim error at CT Page 4509 the trial because the court allowed into evidence a copy of a letter which the plaintiff testified he sent to the defendant Stanley in December 1985. Defendant Stanley objected to its admission on the ground that a request for its production had not been made to the defendant before trial.
(12) The undersigned points out that the defendant Stanley denied that he had received the letter in issue and that the plaintiff was subjected to an intensive cross-examination as to his testimony concerning this letter.
(13) The attorneys for the parties in their post-trial Memoranda raise the issue of credibility of the testimony of their opposing parties and their witnesses.
(14) The undersigned is fully aware that the issue of credibility of the testimony is peculiarly the function of the trial judge to pass upon.
(15) The undersigned, therefore, finds and concludes that the defendants have not sustained their burden of proof to sustain their claim for damages under their Pleading of Set-Off and Counterclaim made part of their Answer.
(16) On the totality of the evidence adduced the undersigned finds that the plaintiff, except for the deductions made in his claims of invoices still due from the defendants, is entitled to judgment, jointly and severally against the defendants, Jocelyn Myjack and George Stanley, reduced from $3900.00 to $2500.00.
(17) Accordingly, judgment is entered for the plaintiff, against both said defendants, in the sum of $2500.00, with interest at the statutory rate, from the date of the judgment herein.
A. FREDERICK MIGNONE State Trial Referee